**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**

**Dayanne Figueroa,**

Plaintiff,

v.

**United States of America,**

Defendant.

**Case No. __-cv-________**

# COMPLAINT

## INTRODUCTION

1. Plaintiff Dayanne Figueroa brings this lawsuit to hold the United States accountable for the actions of the federal agents who violently attacked, arrested, and detained her without reason on October 10, 2025, during the Trump-Vance administration's "Operation Midway Blitz" in Chicago, Illinois.

2. Ms. Figueroa is a United States citizen and single mother of a young son. She is now a victim of the Trump-Vance administration's campaign of violence that has affected communities across the country, including Chicago.

3. On the morning of October 10, 2025, Ms. Figueroa was driving to work in Chicago after dropping off her son at school when she unexpectedly found herself in the crosshairs of an active DHS enforcement operation.

4. Without warning, masked federal agents drove their vehicle into the driver's side of Ms. Figueroa's vehicle.

5. The agents forcibly dragged Ms. Figueroa out of her car, handcuffed her, and threw her into the back of a van with other arrestees.

6. Ms. Figueroa had committed no crime or violation. But federal agents, thinking they could act with impunity, forcibly and violently restrained her, detained her for hours, and deprived her of medical care for post-surgical complications.

7. The forcible nature of her arrest and the deplorable conditions of her detention left Ms. Figueroa physically, mentally, and emotionally injured, and the ordeal's enduring impacts continue to affect her daily functioning today.

8. Ms. Figueroa brings claims of false arrest, false imprisonment, assault, battery, negligence, and the intentional infliction of emotional distress under Illinois law, for which the United States government is liable under the Federal Tort Claims Act ("FTCA"). Through this

lawsuit, she seeks compensation for the injuries she has suffered and seeks to hold both the federal agents involved in her arrest and detention and the Trump-Vance administration that directed their conduct accountable for their unlawful actions.

## PARTIES

9. Plaintiff **Dayanne Figueroa** is a United States citizen and resident of Cook County, Illinois.

10. Defendant **United States of America** is a proper defendant under the FTCA. 28 U.S.C. §§ 1346(b), 2671–2680. Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP") are constituent agencies of the Department of Homeland Security ("DHS"), which was at all relevant times a federal agency, organized and existing under the laws of the United States. The United States is sued for the wrongful acts and omissions of DHS employees while acting within the scope of their employment, including CBP and ICE agents and other federal employees involved in her arrest and detention. The United States has waived its sovereign immunity for such claims.

## JURISDICTION AND VENUE

11. The Court has subject-matter jurisdiction over Plaintiff's claims against Defendant United States of America under 28 U.S.C. § 1346(b)(1).

12. Ms. Figueroa has satisfied the administrative exhaustion requirements with respect to the claims asserted against Defendant United States of America in this action. Prior to commencing this action, Ms. Figueroa submitted an administrative tort claim to DHS, the appropriate federal agency, by submitting an executed Standard Form 95 (Exhibit 1) that was received by the agency on January 20, 2026 (Exhibit 2). She then submitted an amended Standard Form 95 on May 5, 2026. (Exhibit 3). More than six months have elapsed since her amended administrative claim

was received by the agency, and the agency has failed to make final disposition of the claim. *See* 28 U.S.C. § 2675(a).

13. Venue is proper in this district under 28 U.S.C. §§ 1402(b) and 1391(b)(2), because the acts and omissions complained of occurred in Chicago, Illinois, within the Northern District of Illinois, and because the plaintiff resides in this district.

## BACKGROUND

### Trump-Vance Administration Directs Anti-Immigrant Agenda of Intimidation and Mass Deportation

14. Since taking office in January 2025, the Trump-Vance administration has pursued a draconian agenda of immigration enforcement through mass arrests and detentions. Many of the executive orders and other immigration-related actions the administration has taken to date "were designed to create chaos and cause violence while arresting and detaining as many immigrants as possible, regardless of their criminal history or ties to the United States."[1]

15. By summer 2025, the Trump-Vance administration had begun aggressive immigration enforcement operations in cities across the country, deploying thousands of masked agents to terrorize cities including Los Angeles, Portland, and Washington, D.C. Encouraged by senior leadership in the Trump-Vance administration, federal immigration officers employed excessive and dangerous levels of force against immigrants, bystanders, protesters, and members of the press.

[1] State of Ill. Dep't of Hum. Rts., *Illinois Accountability Commission Final Report* 31 (Apr. 2026), https://perma.cc/HQ86-WRR6 ("Commission Final Report"); *see, e.g.*, Exec. Order No. 14159, 90 Fed. Reg. 8443, 8446 (Jan. 20, 2025) ("Protecting the American People Against Invasion").

16. Throughout 2025, federal agents unlawfully and violently arrested and detained thousands of individuals across the country, including over 500 U.S. citizens.[2]

**Trump-Vance Administration Targets Chicago: Operation Midway Blitz**

17. By fall 2025, the Trump-Vance administration turned its focus to Chicago, a longstanding target of the administration.[3] In December 2024, even before the administration had officially taken office, Tom Homan, the administration's "Border Czar," told an audience in Chicago that "[w]e're going to start right here in Chicago, Illinois … January 21st, you're going to look for a lot of ICE agents in your city looking for criminals and gang members. Count on it. It will happen."[4]

18. On September 2, 2025, in a press conference from the White House, the President declared that "Chicago is a hellhole" and stated his intention to deploy the National Guard to Chicago over Governor Pritzker's objection.[5] However, that strategy failed as the Supreme Court determined that the "Government [] failed to identify a source of authority that would allow the military to execute the laws in Illinois." *Trump v. Illinois*, 146 S. Ct. 432, 434 (2025).

19. On September 6, 2025, the President posted an image on his social media platform Truth Social, captioned "Chipocalypse Now," that depicts him against a burning Chicago skyline with

---

[2] Nicole Foy et al., *519 U.S. Citizens Detained*, ProPublica (Oct. 29, 2026), https://perma.cc/9A5U-6ND4.

[3] *See* State of Ill. Dep't of Hum. Rts., *Illinois Accountability Commission Initial Report* 21-23 (Jan. 2026), https://perma.cc/F5PG-HS7G (detailing the Trump administrations' focus on immigration enforcement in Chicago dating back to 2017).

[4] CBS News Chicago, *President-Elect Trump's Plans for Mass Deportations* (Dec. 10, 2024), https://www.cbsnews.com/chicago/video/president-elect-trumps-plans-for-mass-deportations/.

[5] Sarah Schulte & Leah Hope, *Trump Calls Chicago 'a hellhole,'* ABC7 Chicago (Sept. 2, 2025), https://abc7chicago.com/post/what-know-chicago-shootings-stats-anti-crime-efforts-donald-trump-says-hell-send-national-guard/17723687/.

military helicopters overhead. The text of the post stated "'I love the smell of deportations in the morning...' Chicago about to find out why it's called the Department of WAR."[6]




20. Two days later, DHS announced "Operation Midway Blitz," a large and escalated federal immigration enforcement action in Chicago and surrounding communities. In the official press statement, DHS announced that "[t]his operation will target the worst of the worst criminal illegal aliens in Chicago."[7]

---

[6] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 6, 2025, 10:38 AM), https://perma.cc/SF4X-HHJE.

[7] Press Release, U.S. Dep't of Homeland Sec., *ICE Launches Operation Midway Blitz . . .* (Sept. 8, 2025), https://perma.cc/9MKA-G5LR.

21. Led by CBP Commander Gregory Bovino, the Operation lasted until November 11, 2025, during which about 4,500 people were arrested.[8] Some of these individuals, like Ms. Figueroa, were U.S. citizens.[9]

22. On April 30, 2026, the Illinois Accountability Commission issued a detailed 196-page report at the conclusion of the Commission's six-month investigation into Operation Midway Blitz that described the Trump administrations' focus on immigration enforcement in Chicago dating back to 2017.[10] The Honorable Judge Rubén Castillo, the Commission's chair and a former judge of the U.S. District Court for the Northern District of Illinois, said:

> "In my 25 years as a federal judge, I have never seen the type of brutality shown by the agents involved in Midway Blitz. It has been unprecedented[]" … "[t]he brutal conduct examined in these hearings does not reflect isolated incidents. It reflects a pattern that, across locations and operational contexts, is consistent in structure and effect. But the record documented today goes further. It addresses how that pattern was enabled by directives issued from the top."[11]

23. In its final report, the Commission determined that:

> Operation Midway Blitz agents regularly used force against Illinoisans without justification, including immigrants, U.S. citizens, protesters, journalists, clergy members, and bystanders. Federal agents slammed people to the ground without provocation, rammed other vehicles with theirs, sprayed bystanders (including children) with tear gas and pepper spray, and shot two individuals, killing one. Agents failed to use appropriate tactics and then inflamed dangerous situations they created in the first place. And when criticism surfaced, federal administration leadership doubled down and defended the misconduct of their officers.[12]

---

[8] Commission Final Report, *supra* note 1, at 20.

[9] Mack Liederman, *Homeland Security Boss Says Federal Immigration Agents Haven't Detained US Citizens. She's Wrong*, Block Club Chicago (Nov. 4, 2025), https://perma.cc/42KT-49Q5.

[10] *See generally* Commission Final Report, *supra* note 1.

[11] Ill. Accountability Comm'n, *Illinois Accountability Commission's Fifth Public Hearing Reveals Names of Rogue Border Patrol Agents* (Apr. 28, 2026), https://perma.cc/6ELJ-CXPF.

[12] Commission Final Report, *supra* note 1, at 5.

24. DHS deployed roving patrols of CPB agents, who had customarily not been engaged in immigration enforcement away from the southern border, along with ICE agents and federal agents from other agencies, across the city and especially in residential neighborhoods.[13] In so doing, DHS eschewed the practice of previous administrations of using targeted warrant-based enforcement of pre-identified individuals.[14] The federal agents donned masks and military uniforms, carried military-grade weapons, and traveled in unmarked vehicles.[15]

25. As the Commission found, federal agents regularly used "unjustified," "excessive," and "indiscriminate" force during the operation.[16]

26. The hundreds of agents deployed in the city stopped, questioned, and arrested people on the streets based on where they work or "how they look," which Commander Bovino proudly admitted.[17] Latinx people and communities were particularly targeted during the operation.[18]

27. By mid-September 2025, DHS had already made nearly 550 arrests, fifty percent of which were of individuals not intended to be targets of the federal agents carrying out the arrests.[19]

28. It is against this violent and chaotic backdrop that federal agents attacked Ms. Figueroa.

---

[13] *See* Commission Final Report, *supra* note 1, at 5, 32.

[14] *Id.* at 32.

[15] *Id*. at 6.

[16] *Id.* at 74.

[17] Chip Mitchell, *Transcript: Gregory Bovino Says Arrestees in Downtown Chicago Chosen Partly on 'How They Look'*, WBEZ Chicago (Sept. 30, 2025), https://perma.cc/UXK4-KK4Y.

[18] Robin Sluzas, *Lopez Slams City as ICE Raids Continue on Southwest Side*, Greater Southwest News-Herald (Sept. 22, 2025), https://perma.cc/J79R-BVKU.

[19] Rebecca Santana*, ICE arrests nearly 550 in Chicago area as part of 'Midway Blitz,'* AP News (Sept. 19, 2025), https://perma.cc/HG4K-S8V9.

**Plaintiff Is Arrested and Detained on October 10, 2025**

29. On October 10, 2025, at approximately 9:00 a.m., Ms. Figueroa, a 31-year-old Latinx mother and U.S. citizen was commuting to work after dropping her son off at school.

30. At the time, Ms. Figueroa worked as a paralegal.

31. Ms. Figueroa was driving through the West Town neighborhood of Chicago, Illinois, on the route she ordinarily took while commuting to work, when she encountered a chaotic scene, as federal agents were effectuating an arrest of another individual as part of Operation Midway Blitz.

32. At the 1600 block of West Hubbard Street, federal agents had stopped their unmarked silver SUV perpendicular across the street, blocking traffic. *See* Fernando Figueroa, *Chicago, IL Oct. 10, 2025* (Oct. 10, 2025), https://www.youtube.com/watch?v=0euW_3vqKZw.

33. The street was filled with bystanders and onlookers who were honking their car horns and yelling at the agents as they blocked the street and effected the arrest.

34. When federal agents finally began to move the silver SUV, the right lane of the two-lane street opened up, and two vehicles began to drive forward. The first was an unmarked red van driven by federal agents.

35. Ms. Figueroa was driving the second vehicle. As she slowly proceeded forward in the right lane, the federal agents in the silver SUV suddenly accelerated and swerved into the right lane, striking the driver's side of Ms. Figueroa's vehicle, scraping along its length, and trapping her between the SUV and a parked car.

36. CBP Agent Matthew Sulek was driving the vehicle, with CBP Agents Oscar Meza, Michael Turner, and Andrew Torabpour as passengers.[20]

[20] CBP E-STAR Incident Report #25895 at 8, *Chi. Headline Club v. Noem*, No. 25-cv-12173, ECF No. 337-7 (N.D. Ill. Jan. 29, 2026).

37. The federal agents exited their vehicle, wearing masks and vests erroneously labeled "POLICE."

38. At least one agent pointed a firearm at Ms. Figueroa.

39. The federal agents opened Ms. Figueroa's driver's side door and told her to get out. Federal agents proceeded to forcibly and aggressively remove Ms. Figueroa from her vehicle by her legs, causing her shoes to fall off.

40. They pulled Ms. Figueroa and threw her onto the pavement, dragging her with force.

41. The federal agents ripped Ms. Figueroa's cell phone out of her hand.






42. The federal agents applied pressure against Ms. Figueroa's body, pinning her face-down on the street and placing a knee on her body near a surgical incision. That pressure caused acute and severe pain.




43. Ms. Figueroa was unarmed and visibly non-threatening. She stands approximately 4 feet 11 inches tall, weighs approximately 120 pounds, and is physically disabled.

44. Federal agents handcuffed Ms. Figueroa while pinning her to the ground.

45. As federal agents with guns drawn stood between Ms. Figueroa and civilians, they allowed a masked photographer, dressed head to toe in black and wearing no law enforcement insignia, to take close-up photographs of her with a professional camera.




46. Without seeking Ms. Figueroa's consent, the federal agents searched her car and removed her personal belongings, including her work bag and purse.

47. The federal agents scattered Ms. Figueroa's personal items and threw them onto the ground.

48. The federal agents put her cell phone in airplane mode, preventing her friends and family from locating her.

49. Ms. Figueroa was never advised that she was free to leave.

50. Ms. Figueroa told the federal agents multiple times during the day that she is a United States citizen.

51. Nevertheless, the federal agents continued to restrain and detain her.

52. The federal agents never asked Ms. Figueroa for identification.

53. The federal agents took Ms. Figueroa to the unmarked red van.

54. As a bystander asked Ms. Figueroa if there was a phone number for somebody she'd like him to call, the agents threw her in the backseat next to other arrestees before she could respond.

55. The masked and non-uniformed photographer got into the front passenger seat.

56. The federal agents had no warrant and no probable cause to believe that Ms. Figueroa had committed any crime or offense.

57. Ms. Figueroa's severely damaged vehicle was left unattended on the street.

58. The federal agents provided no information about where Ms. Figueroa was being taken and no explanation of why she had been attacked and arrested. The federal agents did not identify themselves. She begged them to tell her who they were and where they were taking her, but they did not answer.

59. Ms. Figueroa experienced a panic attack, shaking, crying, and gasping for air.

60. The agents photographed her while she was in the van, and one agent told her, "You're a criminal. No one will help you."

61. Ms. Figueroa, along with the other arrestees, was first taken to the Broadview Detention Center in Broadview, Illinois.

62. Ms. Figueroa was left in handcuffs while she was transported to Broadview – and remained shoeless when she was walked into the facility.

63. While in custody, Ms. Figueroa was subjected to invasive body searches and to sexualized and degrading comments, mockery, and coercive questioning.

64. Ms. Figueroa is a survivor of organ failure with a chronic kidney condition and at the time of her arrest was in active recovery from a robotic ureteroneocystostomy, a major reconstructive kidney surgery requiring inpatient hospitalization that had taken place about two

months before the incident. After that surgery, she had been discharged with a catheter and an internal ureteral stent in place, resulting in ongoing pain, limited mobility, and strict activity restrictions during her recovery.

65. Ms. Figueroa told the federal agents about her condition and recent surgery, but to little avail.

66. After informing federal agents at the facility that she needed to use a restroom, Ms. Figueroa was eventually taken to a restroom where she remained under surveillance.

67. Before Ms. Figueroa was allowed to use that restroom, she was forced to subject herself to another "search" by an agent touching her private parts.

68. The federal agents denied Ms. Figueroa water and medical attention, and even though she was eventually allowed to use a restroom, she was denied any privacy.

69. Ms. Figueroa was taken to a second facility she believes was operated by DHS in Lombard, Illinois.

70. While at the Lombard facility, Ms. Figueroa was fingerprinted, photographed, and swabbed for DNA.

71. There, she was interviewed by additional federal agents.

72. Ms. Figueroa was read her rights by federal agents before being questioned. When she asked to speak to a lawyer, the federal agents stopped their questioning.

73. Ms. Figueroa was placed in a holding cell while being detained at the Lombard facility.

74. Ms. Figueroa regained access to her cell phone only after she asked to speak with a lawyer.

75. Ms. Figueroa was able to contact her boyfriend and a coworker, a lawyer at the organization where Ms. Figueroa worked.

76. Because of the physical injuries she sustained during her arrest, coupled with prolonged restraint, stress, and the lack of access to a restroom that she could use without being watched, Ms. Figueroa began experiencing hematuria – visible blood in her urine.

77. Only after Ms. Figueroa suffered hematuria did the federal agents begin to respond to the medical needs she had alerted them to since her detention began.

78. Ms. Figueroa was released pending unknown charges after several hours of being held in custody.

79. She was taken by ambulance to Good Samaritan Hospital in Downers Grove, Illinois, for emergency evaluation.

80. By the time Ms. Figueroa was released, her mother, boyfriend, and a lawyer known to her family had come to the Lombard facility in search of her.

81. The federal agents told her mother that Ms. Figueroa was "fine," withholding the fact that she was experiencing a medical emergency and being transported to the hospital.

82. The force with which federal agents extracted Ms. Figueroa from her vehicle and dragged her across the street caused her substantial physical harm.

83. Ms. Figueroa had a broken dental crown and experienced internal bleeding.

84. Ms. Figueroa's surgical wounds were aggravated, and she suffered from bruising, nerve compression, and musculoskeletal strain.

85. Because of the pressure the agents placed on her abdomen and lower torso, Ms. Figueroa suffered acute and severe pain.

86. The federal agents' physical abuse and denial of Ms. Figueroa's requests for medical care exacerbated her underlying kidney condition, delayed her recovery, and resulted in additional medical complications requiring continued monitoring and treatment.

87. The physical injuries she sustained are only one part of what Ms. Figueroa has suffered because of the attack, arrest, and detention. The entire ordeal has been extremely traumatic and disruptive to her life. What happened to her on October 10, 2025, has destroyed her sense of safety, security, and peace. She suffers from severe emotional and psychological trauma, which continues to affect her ability to live her life as she did prior to the incident.

88. During the incident itself, Ms. Figueroa experienced acute panic, terror, humiliation, and fear. Since then, she has suffered recurrent panic attacks, heightened anxiety, hypervigilance, sleep disturbance, intrusive thoughts, emotional exhaustion, and depression. Because of these symptoms, she sometimes is unable to drive, to take care of her child, to be in public spaces, or even to avail herself of the medical care she needs. She now finds it too traumatic to drive down West Hubbard Street, on what used to be her usual route to drop off her child and go to work. Over a year has passed since her arrest and detention, but these symptoms continue to impair her daily functioning.

89. The cumulative effects of her physical and emotional injuries have impaired Ms. Figueroa's ability to continue working, forcing her to leave her job in October 2026 as the one-year anniversary of the ordeal exacerbated her post-traumatic stress.

90. Beyond the injuries Ms. Figueroa sustained, her vehicle, cell phone, laptop, work bag, clothing, and shoes were either damaged or destroyed by federal agents.

91. Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials, and of policies, practices, and customs that directed or permitted suspicion-less enforcement actions based on perceived race, ethnicity, or national origin.

## CLAIMS FOR RELIEF

## COUNT I
## False Arrest/Imprisonment
## Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680
## (Against United States of America)

92. Plaintiff restates and realleges all paragraphs 1-91 above as if fully set forth here.

93. The United States is liable under the FTCA for violations of Illinois tort law committed by federal employees acting within the scope of their office or employment when those violations occurred within the state of Illinois. Under Illinois law, a defendant is liable for false arrest or false imprisonment if a plaintiff was restrained against her will, and the defendant caused the restraint without reasonable grounds to believe that the plaintiff had committed or was committing an offense.

94. As described above, on October 10, 2025, federal agents slammed their vehicle into Ms. Figueroa's vehicle on a public street, forcibly removed her from her vehicle at gunpoint, threw her onto the pavement, handcuffed her, and transported her to detention facilities in Broadview and Lombard, Illinois, where she was held until being taken by ambulance to Good Samaritan Hospital.

95. Federal agents restrained and detained Plaintiff against her will, without reasonable grounds to believe that she had committed any offense. Plaintiff had not committed any offense.

96. The federal agents were, at all relevant times, investigative or law enforcement officers of Defendant United States of America acting within the scope of their office or employment with the federal government. Defendant United States of America is therefore liable for the federal agents' tortious acts pursuant to the FTCA, 28 U.S.C. §§ 1346(b)(1) and 2674.

97. As a direct and proximate result of the federal agents' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

## COUNT II
## Assault and Battery
## Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680
## (Against United States of America)

98. Plaintiff restates and realleges all paragraphs 1-91 above as if fully set forth here.

99. The United States is liable under the FTCA for violations of Illinois tort law committed by federal employees acting within the scope of their office or employment when those violations occurred within the state of Illinois. Under Illinois law, a defendant is liable for an assault if they have engaged in an intentional act which creates a reasonable apprehension in a plaintiff of imminent harmful or offensive contact with the plaintiff's person. And under Illinois law, a defendant is liable for a battery if they intentionally caused a harmful or offensive contact with a plaintiff's person without the plaintiff's consent.

100. Federal agents intentionally and unlawfully used force against Ms. Figueroa and placed her in reasonable apprehension of imminent harmful or offensive contact.

101. As described above, on October 10, 2025, federal agents slammed their vehicle into Ms. Figueroa's vehicle on a public street. They forcibly pulled her from her vehicle at gunpoint, threw her onto the pavement, handcuffed her, transported her to detention in Broadview and Lombard, Illinois, and kept her in restraints for most of her time in detention. They did all of this without Ms. Figueroa's consent.

102. The federal agents were, at all relevant times, investigative or law enforcement officers of Defendant United States of America acting within the scope of their office or employment with the federal government. Defendant United States of America is therefore liable for the federal agents' tortious acts pursuant to 28 U.S.C. §§ 1346(b)(1) and 2674.

103. As a direct and proximate result of the federal agents' actions, Ms. Figueroa suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

**COUNT III**
**Intentional Infliction of Emotional Distress**
**Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680**
**(Against United States of America)**

104. Plaintiff restates and realleges all paragraphs 1-91 above as if fully set forth here.

105. The United States is liable under the FTCA for violations of Illinois tort law committed by federal employees acting within the scope of their office or employment when those violations occurred within the state of Illinois. Under Illinois law, a defendant is liable for intentional infliction of emotional distress if the defendant engaged in extreme and outrageous conduct directed at a plaintiff and the defendant intentionally or recklessly inflicted severe emotional distress upon the plaintiff.

106. On October 10, 2025, the agents intentionally inflicted severe emotional distress on Ms. Figueroa.

107. As described above, on October 10, 2025, federal agents slammed their vehicle into Ms. Figueroa's vehicle on a public street. They forcibly pulled her from her vehicle at gunpoint, threw her onto the pavement, handcuffed her, transported her to detention in Broadview and Lombard, Illinois, and kept her in restraints for most of her time in detention. They did all of this without Ms. Figueroa's consent.

108. The federal agents were, at all relevant times, investigative or law enforcement officers of Defendant United States of America acting within the scope of their office or employment with the federal government. Defendant United States of America is therefore liable for the federal agents' tortious acts pursuant to 28 U.S.C. §§ 1346(b)(1) and 2674.

109. As a direct and proximate result of the federal agents' actions, Ms. Figueroa suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

**COUNT IV**
**Negligence – Failure to Provide Medical Care**
**Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680**
**(Against United States of America)**

110. Plaintiff restates and realleges all paragraphs 1-91 above as if fully set forth here.

111. The United States is liable under the FTCA for violations of Illinois tort law committed by federal employees acting within the scope of their office or employment when those violations occurred within the state of Illinois. Under Illinois law, a defendant is liable for negligence if the defendant owed a duty of care to a plaintiff, the defendant breached that duty, and the breach proximately caused injury to the plaintiff.

112. Federal agents owed Ms. Figueroa a duty to exercise reasonable care for her health and safety when they arrested and detained her on October 10, 2025.

113. The mandatory standards governing federal immigration enforcement and treatment of detained individuals, including 8 C.F.R. § 287.8, DHS use-of-force policies, ICE directives and training, and the Rehabilitation Act and its implementing regulations, reflect and inform the standard of care.

114. Federal agents breached their duty to Ms. Figueroa by failing to accommodate her medical condition and needs throughout her arrest, transport, and detention and by delaying the provision of medical care despite her repeated requests for medical attention. The federal agents' breach of their duty of care to Ms. Figueroa proximately caused her to suffer the loss of liberty, physical injury, emotional distress, humiliation, and other damages.

115. The federal agents were, at all relevant times, investigative or law enforcement officers of Defendant United States of America acting within the scope of their office or employment with the federal government. Defendant United States of America is therefore liable for the federal agents' tortious acts pursuant to 28 U.S.C. §§ 1346(b)(1) and 2674.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a. Award Plaintiff compensatory damages against Defendant United States of America, in an amount not to exceed $1 million, for the physical, mental, and emotional harms that Plaintiff suffered as a result of federal agents' tortious conduct;

b. Award Plaintiff her costs, reasonable attorneys' fees, and other disbursements deemed appropriate; and

c. Grant such other relief as the Court deems necessary, just, and proper.

Date: November 23, 2026

Respectfully submitted,

*/s/ Shiva Kooragayala*
Shiva Kooragayala (Ill. Bar No. 6336195)*
Jeffrey B. Dubner (D.C. Bar No. 1013399)+#
Lesley R. Farby (D.C. Bar No. 495625)+
Zachary Manfredi (CA Bar No. 320331)+-
Brian D. Netter (Ill. Bar No. 6290327)+
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 921-4875
skooragayala@democracyforward.org
jdubner@c.democracyforward.org
lfarby@democracyforward.org
zmanfredi@c.democracyforward.org
bnetter@democracyforward.org
*Counsel for Plaintiffs*

Luis A. Carrillo, Esq. (CA Bar No. 70398) +
Michael S. Carrillo, Esq. (CA Bar No. 258878) +
Maria F. Garcia Baldizzone, Esq. (CA Bar No. 367907) +

Carrillo Law Firm, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
mgteam@carrillofirm.com
maria.garcia@carrillofirm.com

* Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the DC Bar
+ Motion to appear pro hac vice pending
# *Of Counsel*
- *Of Counsel;* located in Washington DC; and admitted only in California